HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JASON LEMARR, et al.,

Plaintiffs,

v.

CREDIT INTERNATIONAL CORPORATION, et al.

Defendants.

CASE NO. C16-33RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs Jason Lemarr and Jeanna Pruitt's (collectively, "Plaintiffs") Motion for a Preliminary Injunction. *See* Dkt. # 8 & 12. Plaintiffs seek an order enjoining Defendants Credit International Corporation ("Credit Int'l") and Jeffrey G. Yonek from issuing any garnishments against Plaintiffs' accounts during the pendency of this litigation. *See* Dkt. # 8 at 17. For the reasons set forth below, the Court **DENIES** Plaintiffs' Motion. Dkt. # 8.

## II. BACKGROUND

This case concerns a string of extremely unfortunate events arising out of a small claims judgment entered against Mr. Lemarr in December 2010 for damage to property Mr. Lemarr rented from Pam Ottman. *See* Dkt. # 8 (Mitchell Decl.) Ex. A at 2; Compl. ¶¶ 5.1-5.3.

Ms. Ottman assigned the judgment to Credit Int'l on November 10, 2013. *See id.* Ex. B at 4. That assignment was filed with the Clark County District Court in January 2014. *Id.* After being assigned the judgment, Credit Int'l proceeded to apply for a writ of garnishment with the Clark County District Court in March 2014. *See id.* Ex. G at 17-18; Dkt. # 17 Ex. A at 2-6. They were partially successful – a default judgment was entered against the garnishee, Driveline Retail Merchandising, in favor of Ms. Ottman. *See id.* at 18. Furthermore, Credit Int'l received two partial payments from Plaintiffs totaling $600 in August 2014. *See* Dkt. # 17 (Snyder Decl.) ¶ 7.

For reasons not entirely clear to the Court, on August 6, 2014, Ms. Ottman assigned the judgment to another entity, Columbia Collectors, Inc. ("Columbia Collectors"), which quickly filed the assignment with the Clark County District Court. *See id.* Ex. C at 6. Columbia Collectors filed a transcript of judgment with the Clark County Superior Court on September 19, 2014. *See id.* Ex. D at 9. Confusingly, Columbia Collectors was entered as the assignee of record.

Plaintiffs ultimately paid Columbia Collectors $2,452.34 to satisfy the judgment on February 11, 2015. *See id.* Ex. E at 11. And Columbia Collectors filed a satisfaction of judgment with the Clark County District Court on February 20, 2015. *See id.* Ex. F at 13. Perhaps because Columbia Collectors was previously entered as the assignee of record, the Clark County District Court noted that the judgment was satisfied.

During this sequence, Mr. Lemarr called Credit Int'l at least two times. *See* Dkt. # 17 (Snyder Decl.) ¶ 9. The substance of those conversations is in dispute, but the Parties generally agree that Mr. Lemarr questioned the validity of Credit Int'l assignment. *See id.*; Compl. ¶ 5.10. Similarly, Plaintiffs spoke to Credit Int'l again, perhaps in February 2015 or in March 2015, again concerning the existence of Columbia Collectors and the proper collection agency to pay. *See id.* ¶ 12; Compl. ¶¶ 5.19-5.23.

Whatever the case, on December 3, 2015, Credit Int'l filed another application for a writ of garnishment with the Clark County District Court directed at Columbia Credit

Union ("Columbia Credit"). *See* Dkt. # 8 (Mitchell Decl.) Ex. G at 18, Ex. H at 21-25. Credit Int'l served Columbia Credit with the writ and mailed copies to Mr. Lemarr the next day. *See id.* Ex. I at 27. The Clark County District Court immediately rejected the application and writ because the judgment had already been satisfied, according to its records. *See id.* Ex. J at 29. However, Columbia Credit answered the writ of garnishment and withheld funds from Plaintiffs' account. *See id.* Ex. K at 32.

This was devastating for the Plaintiffs – they were vacationing in California at the time their funds were garnished, resulting in significant hardship both during and after the trip. *See* Compl. ¶¶ 6.20-6.28. As a result, Plaintiffs have now brought suit against Credit Int'l and a host of individuals associated with Credit Int'l. *See id.* ¶¶ 3.5-3.12. Plaintiffs bring a litany of claims, including for outrage, violations of the Fair Debt Collections Practices Act ("FDCPA"), and for violations of Washington's Consumer Protection Act ("CPA"). *See id.* ¶¶ 6.1-9.24.

## III. LEGAL STANDARD

In order to obtain preliminary relief, a party "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "In addition, a 'preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor,' provided the plaintiff also demonstrates that irreparable harm is likely and that the injunction is in the public interest." *Andrews v. Countrywide Bank, NA*, 95 F. Supp. 3d 1298, 1300 (W.D. Wash. 2015) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)).

## IV. ANALYSIS

a. Whether Plaintiffs are Likely to Succeed on the Merits

The Court begins with the question of whether Plaintiffs are likely to succeed on their claims.[1] Functionally, all of Plaintiffs' claims are premised on the same overriding body of facts: Defendants' filing and serving of a writ of garnishment on Columbia Credit months after Columbia Collectors had already filed a satisfaction of judgment. *See* Dkt. # 8 at 12. They contend that the writ of garnishment was fraudulent and, furthermore, that the Defendants committed perjury when they submitted it to the Clark County District Court. *See id.*

"The FDCPA prohibits debt collectors from engaging in various abusive and unfair practices." *Gray v. Suttell & Assocs.*, 123 F. Supp. 2d 1283, 1287 (E.D. Wash. 2015) (citing *Heintz v. Jenkins*, 514 U.S. 291, 292-93 (1995)). Generally speaking, "[i]n order to state a claim under the FDCPA, a plaintiff must show: 1) that he is a consumer; 2) that the debt arises out of a transaction entered into for personal purposes; 3) that the defendant is a debt collector; and 4) that the defendant violated one of the provisions of the FDCPA." *Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011) (citing *Creighton v. Emporia Credit Serv., Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997)).

"To prevail on a CPA claim, a plaintiff must establish five distinct elements: '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation.'" *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1110 (W.D. Wash. 2012) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986)). "A plaintiff may establish an unfair or deceptive act or practice occurring in trade or commerce for purposes of a CPA claim by proving certain

---

[1] The Court does not address Plaintiffs' claim for outrage because it is not raised in their Motion. Instead, Plaintiffs' Motion appears to focus entirely on their claims under the FDCPA and CPA and WCAA. *See* Dkt. # 8 at 3.

violations of the WCAA." *Id.* (citing RCW § 19.16.440; *Evergreen Collectors v. Holt*, 803 P.2d 10, 12-13 (Wash. Ct. App. 1991)).

Both the FDCPA and the WCAA[2] prohibit certain behavior in collecting on a debt. For example, both prohibit threats to take actions which cannot legally be taken. *See* 15 U.S.C. § 1692e(5); RCW § 19.16.250(16). Likewise, the statutes prohibit harassing or threatening behavior in connection with collecting on a debt. *See* 15 U.S.C. § 1692d; RCW § 19.16.250(13).

There is no serious dispute that the first two elements of Plaintiffs' FDCPA claim are met – Mr. Lemarr incurred the underlying obligation out of damage to property he rented (ostensibly for his personal or household use) from Ms. Ottman.[3] *See* Dkt. # 8 (Mitchell Decl.) Ex. A at 2. Likewise, no party seriously disputes that the relevant Defendants are "debt collectors" under the FDCPA.[4] Moreover, the Parties do not seriously dispute that Plaintiffs have established the last three elements of their CPA and WCAA claims – it seems clear enough that Plaintiffs have shown injury caused by the allegedly unfair acts (i.e., the WCAA violations).

[2] There is no private right of action under the WCAA. *See Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1218 (W.D. Wash. 2011).

[3] The FDCPA defines "consumers" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

Mr. Lemarr incurred the debt for damage to rental property owned by Pam Ottman. *See* Dkt. # 8 (Mitchell Decl.) Ex. A at 2. Amounts owed for such amounts may constitute debt under the FDCPA. *See Dickman v. Kimball, Tirey & St. John, LLP*, 982 F. Supp. 2d 1157, 1164 (S.D. Cal. 2013) (holding that rent owed pursuant to a lease may fall within the FDCPA's definition of debt).

[4] The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Plaintiffs appear to allege that the relevant defendants fall under this definition. *See* Compl. ¶¶ 5.74-5.80.

Furthermore, although Plaintiffs allege that Defendants violated several sections of the FDCPA and WCAA regarding the use of false, deceptive, or misleading representations or the use of unfair or unconscionable means to collect on debts (*see* Dkt. # 8 at 13-14 (citing 15 U.S.C. § 1692e & 1692f, RCW § 19.16.250)), Defendants have elected not to directly respond. Of course, though Plaintiffs contend that "Defendants' actions were clearly 'unfair' and 'deceptive' as those terms are defined" by these statutes (listing a variety of provisions allegedly violated), they do not explain *how* the alleged actions fall into the prohibited categories of conduct. Dkt. # 18 at 8. Ostensibly, Plaintiffs contend that the statements in the writ of garnishment presented to Columbia Credit regarding the character or status of the Plaintiffs' debt were actionable misrepresentations.

Rather, the focus of Defendants' argument is either that they were legally entitled to attempt to garnish Plaintiffs' Columbia Credit account or that Plaintiffs cannot show sufficient intent to trigger liability.

The Court finds some validity in Defendants' contentions. Washington law provides for a functional recording system for the assignment of judgments. *See* RCW § 4.56.090 ("When any judgment has been assigned, the assignment may be filed in the office of the county clerk in the county where the judgment is recorded and a certified copy thereof may be filed in any county where an abstract of such judgment has been filed and *from the time of such filing shall be notice of such assignment*") (emphasis added). And the only Washington case to address the issue appears to concur: so long as the original assignee complied with the judgment-assignment recording provisions, it is good as to a subsequent garnishing creditor. *See Mottet v. Stafford*, 162 P. 1001, 1003 (Wash. 1917).

In other words, Defendants correctly contend that Columbia Collectors received notice that their assignment was improper when they received it. Moreover, it is axiomatic that "an assignee's rights are coextensive with those of the assignor at the time

of assignment." *Fed Fin. Co. v. Gerard*, 949 P.2d 412, 417 (Wash. Ct. App. 1998); *see also Am. Discount Corp. v. Shepard*, 156 P.3d 858, 861 (Wash. 2007) (citing *Puget Sound Nat'l Bank v. Dep't of Revenue*, 868 P.2d 127, 132 (Wash. 1994)) (Madsen, J., dissenting) (contending that judgment assignees step into the shoes of the assignor, obtaining all applicable rights and liabilities). What this means is that Columbia Collectors could not obtain any rights in excess of what Ms. Ottman held – ostensibly nothing at that juncture, given the prior assignment (with notice) to Credit Int'l. *See Morse Electro Prods. Corp. v. Beneficial Indus. Loan Co.*, 579 P.2d 1341, 1342 (Wash. 1978) (citing *Pallus v. Fowler*, 367 P.2d 130, 135 (Wash. 1961); *Young v. Am. Can Co.*, 230 P. 147, 148 (Wash. 1924)).

Given this, Defendants may not have made any false, misleading, or deceptive statements regarding the status of the judgment in their attempt to collect on the judgment. Plaintiffs may have attempted to satisfy their judgment by paying Columbia Collectors, but the record at least suggests that Columbia Collectors had no right to those judgment proceeds. Instead, because of the initial assignment to Credit Int'l, the only apparent method of satisfying the judgment would have been payment to Credit Int'l; Columbia Collectors may have held no right to the judgment and the judgment could not be satisfied by paying them.

At the same time, the Parties all ignore the existence of RCW § 4.56.100(1). Under that provision, when any money judgment is partially or fully satisfied, the clerk of the court in which the judgment was rendered must note that satisfaction in the docket. *See id.* Most importantly, "[w]hen so satisfied by the clerk or the filing of such certificate the lien of such judgment *shall be discharged*." *Id.* (emphasis added). In short, when the clerk of the Clark County District Court entered the satisfaction of judgment in favor of Columbia Collectors, Defendants' rights to collect on the underlying judgment (whatever they were at that time) may well have been extinguished. *See Aaseby v. Vue*, No. 32471-1-III, 2015 WL 5167428, at *4 (Wash. Ct. App. 2015) (citing Wash. R. App. P. 7.2(c))

("Satisfaction and discharge stops enforcement of the action. . . . Once the clerk finds that the judgment is satisfied, it must be discharged"). If so, then Plaintiffs' claims may hold water.

With this in mind, it is not entirely clear to the Court that Plaintiffs are likely to succeed on the merits. For one, there is some doubt regarding whether a violation even occurred. If Defendants' assignment were valid, then the underlying judgment may not have been satisfied by any payment to Columbia Collectors. If that were the case, then Defendants may not have made any misrepresentations (or attempted to use illegal or unfair means) in attempting to collect on that judgment. At the same time, the Defendants may no longer have had the ability to execute on the judgment the moment the Clark County District Court entered the satisfaction of judgment. That may well have rendered Defendants' statements false.

An additional wrinkle exists. Defendants correctly note that they may be able to show that a bona fide error occurred during the course of collection. As Defendants suggest, "a debt collector is not liable for its violations of the FDCPA if 'the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'"[5] *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176-77 (9th Cir. 2006) (quoting 15 U.S.C. § 1692k(c)). To be sure, the FDCPA is ordinarily a strict liability statute, making debt collectors liable for violations that are not knowing or intentional. *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008)). Nevertheless, the bona fide error defense exists for a defendant who can show that "(1) it violated the FDCPA unintentionally; (2)

[5] It is not clear whether the WCAA contains a bona fide error defense. Some courts have apparently imputed one in considering FDCPA and WCAA claims together. *See e.g., Campion v. Credit Bureau Servs., Inc.*, 206 F.R.D. 663, 674 (E.D. Wash. 2001) ("the FDCPA bona fide error defense may apply to a claim arising from this more common conduct. If the defense applies, no claim exists under the FDCPA and there is no per se violation of the WCAA, Wash. Rev. Code § 19.16.250(14) or of the WCPA, Wash. Rev. Code § 19.86.020").

the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011). A procedure sufficient to support a valid bona fide error defense must be reasonably adapted to avoid the specific error at issue. *See id.* (quoting *Reichert*, 531 F.3d at 1006).

As discussed, *supra*, whether a violation of the FDCPA or WCAA occurred is still in question. Regardless, Defendants have presented some evidence that whatever mistake they made was unknowing and unintentional. *See* Dkt. # 17 (Snyder Decl.) ¶¶ 13, 16. Nevertheless, Defendants have not supplied significant evidence regarding the sufficiency of their procedures (though, given the peculiarity of this situation, it is not clear what specific procedures should have been instituted to avoid it). In this sense, Defendants' proposed bona fide error defense does not hold water.

In any event, the Court is not entirely convinced that Plaintiffs have shown that they are likely to succeed on the merits. Substantial questions remain as to the validity of Defendants' judgment assignment and, more importantly, as to whether the clerk's entry of a satisfaction of judgment extinguished Defendants' rights to enforce the judgment.

b. <u>Whether Plaintiffs are Likely to Suffer Irreparable Harm</u>

The next question is whether Plaintiffs are likely to suffer irreparable harm in the absence of a preliminary injunction. *Winter*, 555 U.S. at 20. This element is considered the most important prerequisite for the issuance of a preliminary injunction. *See Dex Media W., Inc. v. City of Seattle*, 790 F. Supp. 2d 1276, 1288 (W.D. Wash. 2011) (quoting *Kotok v. Homecomings Fin., LLC*, No. C09–662RSM, 2009 WL 1652151, at *2 (W.D. Wash. June 12, 2009)).

Plaintiffs argue that they are likely to suffer irreparable harm without a preliminary injunction because they will certainly suffer harm if Defendants attempt another garnishment. *See* Dkt. # 8 at 15-16. That may well be true, but "plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary

injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Plaintiffs contend that their harm is likely, arguing that if Defendants have attempted to garnish Plaintiffs' accounts once, they are likely to do so again. *See* Dkt. # 18 at 10. The Court is not convinced because it is far from certain that Defendants will attempt (or may even attempt) to issue another writ.

Defendants have indicated that they will not issue any writ until the State Court determines the proper assignee of Ms. Ottman's judgment. *See* Dkt. # 17 at 13. In other words, whether Defendants attempt another garnishment depends upon a finding that the Ms. Ottman's assignment of the judgment to Columbia Collectors was improper and that the judgment was never properly satisfied. If that were the case, then they may very well be entitled to seek any amounts that were not properly satisfied. Furthermore, Defendants appear to have attempted (perhaps halfheartedly) to remediate their December 2015 writ of garnishment by after being advised of the satisfaction of judgment. *See* Dkt. # 17 (Snyder Decl.) ¶¶ 14-16. Whatever efforts they initially attempted failed, as Columbia Credit did not release the funds until after they faxed a release in January 2016. *See id.* ¶¶ 18-20. Given these facts, whether Defendants may even proceed to collect on the judgment remains speculative at best. And the Court is convinced that, given the present circumstances, Defendants are not likely to proceed as cavalierly as they did before. "Speculative injury cannot be the basis for a finding of irreparable harm." *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) (citing *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.3d 466, 472 (9th Cir. 1984)). And Plaintiffs have not shown any non-speculative injury.

c. <u>Whether the Balance of Equities Tips in Plaintiffs' Favor</u>

Next, the Court considers whether the balance of the equities tips in Plaintiffs' favor. "In assessing whether the plaintiffs have met this burden, the district court has a 'duty . . . to balance the interests of all parties and weigh the damage to each.'"

*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)).

Plaintiffs argue that the equities are in their favor as they have satisfied the judgment and have suffered economic and emotional injury as the result of Defendants' conduct. *See* Dkt. # 18 at 9. Defendants contend that they have been swallowed into a quagmire as a result of the second assignment. *See* Dkt. # 17 at 14.

The balance of the equities tips in Plaintiffs' favor. Presumably, Plaintiffs are more likely to suffer economic harm should a preliminary injunction not issue than Defendants will suffer should such an injunction issue. *See Alaska Survival v. Surface Transp. Bd.*, 704 F.3d 615, 616 (9th Cir. 2012) (citing *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010)) (noting that economic harm is a factor in considering the balance of the hardships). But as explained, *supra*, their claims of irreparable harm are not certain.

d. <u>Whether an Injunction is in the Public Interest</u>

Finally, the Court is tasked with determining whether a preliminary injunction is in the public interest. *Winter*, 555 U.S. at 20. "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)). Plaintiffs argue that an injunction is in the public interest to ensure the proper functioning of the legal system. *See* Dkt. # 8 at 16. Defendants contend that the facts of the case necessarily confine any injunction to the transactions between the Parties. *See* Dkt. # 17 at 15.

The Court agrees with Defendants. Any injunction the Court were to issue would have little effect (if any) on third parties. Of course, Plaintiffs are right to contend that a working legal system depends on the integrity of the practitioners before it. *See e.g., In re Wenk*, 296 B.R. 719, 727 (Bankr. E.D. Va. 2002) (quoting *In re Carlton House of*

*Brockton, Inc.*, No. 93-21122-CJK, 1996 WL 442734, at *5 (Bankr. D. Mass. Feb. 20, 1996)) ("[t]he integrity of the judicial process in any court depends to a large extent on the veracity and integrity of the attorneys who practice before it. Absent the trust those virtues inspire, the system cannot function."). But the injunction presently before the Court – narrowly focused on the Parties as it is – is unlikely to affect any other parties.

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiffs' Motion. Dkt. # 8. The Court finds that Defendants have raised sufficient questions regarding the Plaintiffs' likelihood of success on the merits and as to Plaintiffs' claims of irreparable harm. Although the Court greatly sympathizes with the Plaintiffs' plight, it must find that the Plaintiffs have not met their burden in showing that a preliminary injunction is necessary.

The facts of this case are peculiar – and it is crucially important to determine what occurred in the underlying state proceedings. Moreover, there are serious questions as to Ms. Ottman and Columbia Collectors' conduct: both plainly had notice of Credit Int'l's prior assignment and ignored it (whether deliberately or not). The Court dares not tread into those murky waters at this time. However, a stronger factual record as to the involvement of those parties is necessary to resolving this case.

DATED this 31st day of May, 2016.

The Honorable Richard A. Jones
United States District Judge